IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| M.P. MOON, individually and as representative of a class of participants and beneficiaries in and on behalf of the DuPont Pension and Retirement Plan, <br><br> Plaintiff, <br> vs. <br><br> Corteva, Inc., Dupont De Nemours, Inc., U.S. Dupont Pension And Retirement Plan, The Administrative Committee, E. I. Du Pont De Nemours And Company and the Dupont Benefits Plans Administrative Committee <br><br> Defendants. | Civil Action No. <br><br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

1.       Plaintiff M.P. Moon ( "Plaintiff"), individually and as a representative of a class of participants and beneficiaries of the DuPont Pension and Retirement Plan ("Plan"), brings this action under 29 U.S.C. §1132(a)(1(B) to recover unpaid benefits due to him and the putative class, and under  29 U.S.C. §1132(a)(2) and (3) against Defendants E. I. du Pont de Nemours and Company ("DuPont"), and the DuPont Benefits Plans Administration Committee, (referred to herein as "Defendants") for breach of fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§1001-1461 ("ERISA").

2.       Plaintiff M.P. Moon, a citizen and resident of the State of Delaware, was an employee of DuPont from March 7, 1979 to October 31, 1999. At all times relevant to this action, Plaintiff was and is a participant in and beneficiary of the Plan.

3.       The Plan is a noncontributory defined benefit plan which covers the majority of employees of DuPont and its consolidated subsidiaries. The Plan is an employee pension benefit

plan within the meaning of ERISA § 3(2) and (3), 29 U.S.C. §§1002(2) and (3), and ERISA § 4(a), 29 U.S.C. § 1003(a).

4.      Nearly two years ago, The Dow Chemical Company merged with E.I. du Pont de Nemours and Company. The combined entity, DowDuPont, was the largest chemical conglomerate in the world. The two historical companies had intended and planned from the beginning to separate into three wholly independent companies and move the Plan to one of the newly formed companies.

5.      On November 1, 2018, Ed Breen, CEO of DowDuPont, announced that the Plan, along with DuPont, were moving to a company with the trade name Corteva Agriscience (legally named Corteva, Inc. ("Corteva")), a spin-off focused purely on agriculture. The existence of DuPont, the Plan's sponsor for more than a century and the company for whom the Plaintiff and Class worked, would be mostly nominal, as all of the assets and business lines of that company other than its agricultural businesses would stay with the newly formed DuPont de Nemours, Inc., ("New DuPont") while all of its pension liabilities, along with tremendous litigation liabilities, would transfer to Corteva.

6.      Defendant Corteva, Inc., ("Corteva") is a Delaware corporation with its corporate headquarters located at 974 Centre Road, Wilmington, Delaware 19805. As of June 1, 2019, Corteva, a former subsidiary of DuPont, is now the parent company of Historical DuPont and is the entity with ultimate responsibility for the maintenance of the Plan.

7.      Defendant DuPont de Nemours, Inc., ("New DuPont") is a Delaware corporation with its corporate headquarters located at 974 Centre Road, Building 730, Wilmington, Delaware 19805.  New DuPont is the transferee of all of the operating assets formerly held by DuPont and that supported all the liabilities of the Plan and DuPont as plan sponsor.

8.     DuPont, a Delaware Corporation that maintains its principal place of business at 974 Centre Road, Chestnut Run Plaza, Wilmington, Delaware 19805, is the sponsor of the Plan. DuPont is the technical sponsor of the Plan but is now a subsidiary of Corteva with no separate assets or business operations.

9.     The Plan is administered by Defendants' Benefits Plans Administration Committee ("Committee"), which has authority to adopt such rules as it may deem necessary for the proper administration of the Plan. As the Plan administrator, the Committee "is responsible for day-to-day plan operations, pursuant to 29 U.S.C. §1002(16)(A)(i). The Plan Administrator is a 'named fiduciary' for purposes of section 402(a)(1) of ERISA."

10.    The Chief Financial Officer of the Company oversees the management of the assets of the DuPont Pension Trust (the "Master Trust"). The assets of the Plan are held in the Master Trust, of which 100% is owned by the Plan.

11.    Participating DuPont employees, including Plaintiff, become vested in the Plan after the completion of 5 years of service or the attainment of normal retirement age, which is defined as the later of age 65 or upon completion of five years of service.

12.    Generally, under the terms of the Plan, a participant becomes vested in his or her pension benefits after completion of five years of eligibility service.  Once vested, a participant's pension benefit, and all benefits accrued after becoming vested, are non-forfeitable and cannot be reduced.  29 U.S.C.  § 1053.

13.    Plan participants, including Plaintiff, are eligible to receive vested benefits upon termination of employment, retirement, death or total disability and the benefits may be paid immediately if age and service requirements are met.  Benefits are determined using a formula which

takes into account service and final average earnings and are paid as a monthly annuity over the lifetime of the participant, or over the lifetime of the participant and his or her surviving spouse.

14.     Ordinarily, benefits become payable once a participant has terminated employment and reached the plan's normal retirement age of 65.  A participant who commences benefits at age 65 will receive the full unreduced amount of his or her accrued benefit.

15.     A vested participant who has terminated employment with DuPont can begin receiving pension benefits earlier than age 65, but unless the participant satisfies certain conditions, the amount of the benefit will be reduced to account for the early commencement, since he or she will receive payments over a longer period.

16.     Certain participants like Mr. Moon, whose employment was involuntarily terminated, are eligible to receive unreduced retirement benefits commencing earlier than normal retirement age.  In fact, Mr. Moon was eligible to begin receiving unreduced benefits as early as July 1, 2010, when Mr. Moon was 58.

17.     Defendants never adequately informed Mr. Moon of his right to receive unreduced pension benefits commencing on July 1, 2010.  Mr. Moon did not become aware that he was eligible to receive unreduced retirement benefits prior to normal retirement age of 65 until he applied for Social Security benefits and was informed by the Social Security Administration that, based on information provided by DuPont, he may have been eligible for unreduced retirement benefits from the Plan starting in 2012.  As Mr. Moon would later learn from Defendants, he was eligible for unreduced retirement benefits beginning in July 2010.

18.     Upon learning this, Mr. Moon filed a claim with Benefit Determination Review Team, the committee established by DuPont to review claims for benefits, asking that missed pension payments, totaling $135,492, and which would otherwise be lost forever, be paid to him.  The

Benefit Determination Review Team denied Mr. Moon's claim, citing administrative procedures requiring that a participant must apply for benefits before benefits can commence.

19.    Within the time period established for appealing claims denied by Benefit Determination Review Team, Mr. Moon appealed that decision to the DuPont Benefit Appeals Committee which ultimately denied his appeal, citing the same administrative procedures.

20.    As required by law, Defendants notified the Internal Revenue Service (which then notifies the Social Security Administration) of Mr. Moon's eligibility for unreduced pension benefits commencing five years prior to his normal retirement date (even though DuPont later informed Mr. Moon that he was eligible for unreduced pension benefits seven years prior to normal retirement age), but adopted administrative procedures that fail to notify participants when they are eligible to apply for unreduced benefits.

21.    This procedure constitutes a blatant violation of Defendants' fiduciary duty to administer the Plan solely in the best interest of participants for the exclusive purpose of providing them benefits.  Instead, the procedure is designed to benefit DuPont at the expense of unwitting participants who fail to apply for pension benefits as of the date they are first eligible for unreduced benefits.  Because pension benefits are paid monthly for life, a participant who fails to commence his or her pension at the earliest date they are eligible for unreduced benefits will never recover the lost payments.  Instead, those lost payments will benefit DuPont, which has the financial responsibility for funding all benefits paid from the Plan.  The failure to pay Mr. Moon and other similarly situated the entire value of the pensions will reduce the financial cost to DuPont of funding those benefits.

22.    The failure to pay Mr. Moon and others similarly situated the entire value of their benefit results in an illegal forfeiture in violation of ERISA § 203, 29 U.S.C. 1503.

23.     To remedy these fiduciary breaches and violations of ERISA's vesting rules, Plaintiff, individually and as representative of a class of participants and beneficiaries in the Plan, bring this action for the restoration of benefits under 29 U.S.C. §1132(a)(1)(B), and on behalf of the Plan under  29 U.S.C. §1132(a)(2) and (3) to enforce Defendants' personal liability under 29 U.S.C. §1109(a) to restore to the Plan all losses resulting from each breach of fiduciary duty.  In addition, Plaintiffs seek such other equitable or remedial relief for the Plan as the Court may deem appropriate.

## JURISDICTION AND VENUE

24.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331 because it is an action under 29 U.S.C. §1132(a)(1)(B) and  29 U.S.C. §1132(a)(2) and (3).

25.     This District is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because it is the district in which the Plan is administered, where at least one of the alleged breaches took place and where Plaintiff and at least one Defendant resides.

## FACTS

26.     Mr. Moon worked for DuPont for more than 20 years when his employment was involuntarily terminated in 1999.  At that time, he received DuPont an Accrued Benefit Statement dated March 7, 2000 describing his Plan benefits, attached as Exhibit A to this Complaint.  Nothing in the Accrued Benefit Statement indicates that Mr. Moon was eligible to apply for unreduced benefits in July 2010, or at any time prior to his normal retirement age of 65.

27.     Subsequent to that Accrued Benefit Statement Mr. Moon was never notified that he was eligible for unreduced pension benefits earlier than his normal retirement age.

28.     Upon first learning of his eligibility for unreduced retirement benefits, Mr. Moon requested, by filing a claim with Benefit Determination Review Team, for pension payments retroactive to July 2012; the date he thought was his earliest retirement date based on information he had obtained, not from DuPont or the Plan Administrator, but from the Social Security Administration.

29.     His claim was denied, citing to a provision in the 2013 Summary Plan Description stating that a participant must apply to commence retirement benefits, that the application for benefit must be completed "before your retirement kit expires" and "If you do not comp1ete the process before your retirement kit expires, you must *initiate* your *retirement request* again using a *future* pension *payment* start date. Missed payments will not be restored to you ...."

30.     Even apart from the failure to adequately notify Mr. Moon of his eligibility for unreduced early retirement benefits, there is no reason to adopt a procedure that denies a participant benefits to which he or she is entitled.  In fact, it is a violation of ERISA § 203 to require a participant to forfeit vested benefits.

31.     There is no practical reason to adopt and enforce such a procedure, because the benefits are owed to the participant, and the refusal to pay these vested benefits results in unjust enrichment to the Plan, ultimately for the benefit of DuPont.  No other participant's benefit will be increased as a result of the windfall to the Plan. This fact demonstrates that this procedure is born out of self-interest and disloyalty to participants and designed to benefit DuPont because the forfeited pension payments inure to the benefit of DuPont.

32.     The opposite result would occur if the Plan had paid Mr. Moon or any other participant more than the benefit to which he or she was entitled.  On information and belief, the Plan

has procedures for recovering those excessive payments, including by the reduction of future ben-efits payments.  Such a procedure is not only acceptable, it is effectively required in order to fulfill DuPont's fiduciary duties to the Plan to ensure that plan assets are adequately protected for the benefit of all participants.  That same fiduciary duty, however, requires that underpayments be restored as well.

33.     As noted above, under ordinary circumstances, a participant who commences re-tirement benefits earlier than normal retirement age will receive a reduced benefit to account for the fact that monthly benefit payments will be made over a longer period than if benefits began at normal retirement age.  Conversely, if benefits commence later than the date at which a participant is eligible for unreduced benefits, the benefit payments should be actuarially increased to take into account that benefit payments will be made over a shorter period that if they had begun at the earliest commencement date.

34.     The members of the Benefit Determination Review Team, the group that reviewed and denied Mr. Moon's claim, and the Benefit Appeals Committee, are employees of DuPont, not independent of DuPont, and any decision made by either is fatally tainted by self-interest.  At a minimum, the members of these two committees are conflicted between pleasing their employer and reaching a fair conclusion.  In a touching bit of irony, the written denial of Mr. Moon's claim states: "DuPont, as the Plan Administrator, is a fiduciary of the Plan and must administer the Plan in accordance with its terms for the benefit of all participants and beneficiaries. No exceptions to this rule are permitted."  But there is nothing about Mr. Moon's claim for benefits, to which he is clearly entitled under the terms of the Plan, that would have any effect whatsoever on the Plan or any other participant.  Nor do other participants benefit in any way from the denial of Mr. Moon's claim.   The only effect of the denial is to benefit DuPont by reducing its funding obligation by the

amount forfeited by Mr. Moon.  In the statement quoted above, DuPont acknowledges its fiduciary duty to all participants and in the same breath, reaches a decision that benefits no one but DuPont. All this statement demonstrates is that Defendants will treat all participants in Mr. Moon's shoes equally unfairly.

35.     Even the language of the written denials appears designed to obfuscate.  The denial of Mr. Moon's appeal states "The instructions for requesting estimates and applying for benefits were provided in the Notice of Eligibility for Pension Benefit sent to you in March 2000 with your Accrued Benefit Statement." As previously alleged, the Accrued Benefit Statement provides no indication that Mr. Moon was eligible for ***unreduced benefits*** at any time before June 3, 2017. While the statement does say that his earliest benefit commencement date is July 2000, it does not say that he was eligible for an unreduced benefit in July 2000.  The only notice Mr. Moon ever received referring to his eligibility for an unreduced early retirement benefit was a document enti-tled "Pension Calculation Statement Reflecting TPS Lump Sum Election (Retirement Package)" dated September 15, 1999 at the time of his involuntary termination and ten years before the ear-liest date on which he could begin receiving unreduced retirement benefits.  Even that reference is cryptic at best, stating only "Earliest Unreduced BCD – 7/1/2010."  There was no explanation of what that meant and no subsequent notification that he was eligible to begin receiving unreduced benefits prior to his attainment of normal retirement age.  For example, tables included in the 2018 Summary Plan Description indicate that Mr. Moon's benefit, based on 20 years of service, would have been reduced if he commenced earlier than age 65.

36.     The single cryptic reference in the Pension Calculation Statement Reflecting TPS Lump Sum Election (Retirement Package) of Mr. Moon's Earliest Unreduced BCD, the repeated

failure in subsequent statements of pension benefits and other plan communications to fully de-

scribe Mr. Moon's right to an unreduced early retirement benefit, and the stated justification for

the denial of Mr. Moon's claim that DuPont is not required to provide notice to Mr. Moon when it

notifies the IRS, and indirectly the Social Security Administration, of his eligibility for unreduced

early retirement benefits, indicates an attempt to conceal from Mr. Moon and all similarly situated

DuPont retirees their rights unreduced early retirement benefits.

37.     The denial of Mr. Moon's appeal states further states: "The Social Security Admin-

istration ("SSA") Notice of "Potential Private Retirement Benefit Information" was sent to you

based on information from the SSA's records; DuPont did not contact the SSA about your benefit

in 2012." This is disingenuous at best. The information in the SSA's records is required by federal

regulation to be provided by DuPont to the Internal Revenue Service. So while technically true

that DuPont did not contact SSA, the statement in the denial was clearly designed to confuse Mr.

Moon about how the SSA happened to know more about his retirement benefits than did he.

38.     Nothing in the written denials addressed the fact that the Plan, and hence DuPont,

would profit from the denial of Mr. Moon's claim.

39.     Notwithstanding that Mr. Moon had fully earned his unreduced early retirement

benefit, that the amount of that unreduced early retirement benefit had already been funded by

DuPont, that no harm would be caused to the Plan or to any other participant in the Plan, and that

DuPont acknowledged its fiduciary duty to all participants including Mr. Moon, the best justifica-

tion DuPont could offer to Mr. Moon in the denial of his claim was to say "DuPont is not required

to notify you that you may commence your benefit when your benefit is reported to the Social

Security Administration."

40.     In 2017, Mr. Moon was notified by DuPont that he was eligible to commence his benefit at age 65, after he had lost more than $135,000 that he could never recover.  Any reasonable fiduciary, acting in the best interest of plan participants, would have provided that notice at the earliest date Mr. Moon became eligible for unreduced benefits.

## CLASS ACTION ALLEGATIONS

41.     29 U.S.C. §1132(a)(1) authorizes any participant or beneficiary of the Plan to bring an action to recover benefits due to him under the terms of his plan or to enforce his rights under the terms of the plan.

42.     29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109(a).

43.     In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3), Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the Plan, excluding Defendants and any participant who is a fiduciary to the Plan, (the "Legacy Plan Class"), who was eligible for unreduced retirement benefits from the Plan prior to attainment of normal retirement age of 65 and whose unreduced retirement benefits commenced on a date that was later than his or her earliest eligibility for unreduced pension benefits.

44.     This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a.  As of December 31, 2017, the Plan had 112,734 participants. Accordingly, the Class is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to the Class, including without limitation: who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to Plaintiff and the Class; what are the losses to Plaintiff and the Class resulting from each breach of fiduciary duty; and what Plan-wide equitable and other relief the court should impose in light of Defendants' breach of duty.

c. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a Plan participant during the time period at issue in this action, and, like all Class members, he did not receive Plan benefits until he reached the Normal Retirement Date at age 65, he was misled as to the availability of full pension benefits as of a date in advance of the Normal Retirement Date, and he was harmed by Defendants' misconduct.

d. Plaintiff is an adequate representative of the Class because he was a participant in the Plan during the Class period, has no interest that is in conflict with the Class he seeks to represent, is committed to the vigorous representation of the Class and has engaged experienced and competent attorneys to represent the Class.

e. Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of: (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. §1109(a); and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties

to the adjudication or would substantially impair or impede those participants' and benefi-

ciaries' ability to protect their interests. Therefore, this action should be certified as a class

action under Rule 23(b)(1)(A) or (B).

45.     A class action is the superior method for the fair and efficient adjudication of this

controversy because joinder of all participants and beneficiaries is impracticable, the losses suf-

fered by individual participants and beneficiaries may be small and impracticable for individual

members to enforce their rights through individual actions, and the common questions of law and

fact predominate over individual questions. Given the nature of the allegations, no member of the

Class has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware

of no difficulties likely to be encountered in the management of this matter as a class action. Al-

ternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified

under Rule 23(b)(1)(A) or (B).

46.     Plaintiff's counsel will fairly and adequately represent the interests of the Class and

are best able to represent the interests of the Classes under Rule 23(g).

## COUNT I
### Pension Benefits

47.     Plaintiff restates and incorporates the allegations in the preceding paragraphs.

48.     As of the time of his separation from employment with DuPont in 1999, Plaintiff

was fully vested and eligible to receive pension benefits from the Plan at a reduced rate of approx-

imately $600 per month.

49.     Defendants and the Plan documents misrepresented repeatedly that Plaintiff would

not be eligible to receive his full monthly pension benefit of approximately $1,613 until he reached

"full retirement age" in 2017.

50.     In reliance upon the terms of the Plan documents and Defendants' communications with Plaintiff, which reliance at all relevant times was reasonable, Plaintiff deferred requesting Defendants to commence payment of his retirement benefits under the Plan until he reached full retirement age in 2017.

51.     Unbeknownst to Plaintiff, under the terms of the Plan, he was eligible to receive his full monthly benefit as early as July 1, 2010. Indeed, Defendants notified the Social Security Administration (but not Plaintiff), that Plaintiff was eligible to begin receiving his unreduced retirement benefit of $1,613 per month as of 2012.

52.     Had Plaintiff known that he was eligible to receive his unreduced monthly retirement benefit of $1,613 in 2010 or 2012, he would have promptly requested that Defendants commence payment of such benefits at the earliest date possible.

53.     Defendants have provided Plaintiff unreduced retirement benefits beginning on or about July 1, 2017. However, Defendants have twice denied Plaintiff's administrative appeals seeking benefits retroactive to the earliest benefits commencement date of July 1, 2010 or the alternative January 1, 2012 benefit commencement date.

54.     Defendants' steadfast refusal to provide unreduced pension benefits to which Plaintiff is entitled under the terms of the Plan documents constitutes and effects a forfeiture of vested pension benefits in violation of ERISA.

55.     The value of the pension benefits effectively forfeited due to Defendants' breach of fiduciary duties and violations of ERISA amount to at least $135,492.00, exclusive of interest and penalties, were such benefits commenced as of July 2010, and at least $96,780.00, exclusive of interest and penalties, were such benefits commenced as of July 2012.

56.     As a result of a denial of his claims and appeals to Defendants, who are the Plan's sponsors, administrators and fiduciaries, Plaintiff has been denied pension benefits, such denial having been conducted without proper review by Plan administrator, resulting in a fiduciary breach by the Plan Administrator of the terms of the Plan.

57.     Plaintiff has fulfilled the requirement of exhaustion of administrative remedies under ERISA by submitting the matter to the Plan Administrators and having receiving letters of denial of his appeals of his claim denial.

## COUNT II
### Breach of Fiduciary Duties

58.     Plaintiff restates and incorporates the allegations contained in the preceding paragraphs.

59.     The scope of the fiduciary duties and responsibilities of Defendant includes administering the Plan and acting with the care, skill, diligence, and prudence required by ERISA.

60.     Defendant failed to engage in a prudent process for reviewing eligibility to receive unreduced pension benefits under the Plan

61.     Had a prudent and loyal fiduciary conducted a prudent process for the administration, notification, and review of eligibility for payment of unreduced retirement benefits, Defendants would have determined that Plaintiff was eligible to receive unreduced pension benefits not later than July 1, 2010, or in the alternative, no later than July 1, 2012.

62.     On information and belief, there are hundreds, if not thousands, of participants in the Plan who are similarly situated and have forfeited pension benefits due to Defendants' fiduciary breaches. Total participant losses will be determined after complete discovery in this case and are continuing.

63.     The procedures adopted by Defendants for administering and paying pension benefits to individuals who are eligible for unreduced pension benefits prior to normal retirement age are designed to benefit Defendants at the expense of participants and violates Defendant's strict duties of loyalty to act solely in the best interest of participants and beneficiaries.

64.     As a result of the fiduciary breach of the Defendants and as a consequence of denial of status under the Plan above referred to, Defendants continue to retain funds due Plaintiff and continue to be subject to restitution as appropriate equitable relief under ERISA Section 503(a)(3) [29 U.S.C. Section 1132(a)(3)] to allow transfer of said funds to and for the benefit of Plaintiff and the Class.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

A.      Find and declare that the Defendants have breached fiduciary duties as described above;

B.      Find and declare that the Defendants have improperly denied Plaintiff and the Class of benefits to which they are entitled under the terms of the Plan;

C.      Find and adjudge that Defendants are personally liable to make good to the Plaintiff and the Class all illegally forfeited benefits and all losses resulting from each breach of fiduciary duties, and to otherwise restore the Plaintiff, the Class and the Plan to the position they would have occupied but for the failure to pay vested benefits and for breaches of fiduciary duty;

D.      Determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

E.      Order Defendants to provide all accountings necessary to determine the amounts

Defendants must make good to the Plaintiff the Class for unpaid benefits and to the Plan

under §1109(a);

F.      Remove the fiduciaries who have breached their fiduciary duties and enjoin them

from future ERISA violations;

G.      Surcharge against Defendants and in favor of the Plan all amounts involved in any

transactions which such accounting reveals were improper, excessive and/or in violation

of ERISA;

H.      Enjoin he Defendants from illegally forfeiting vested benefits;

I.      Certify the Class, appoint the Plaintiff as a Class Representative, and appoint Plain-

tiff's counsel P. Bradford deLeeuw and Michael McKay as Class Counsel;

J.      Award to the Plaintiff and the Class attorney's fees and costs under 29 U.S.C.

§1132(g)(1) and the common fund doctrine;

K.      Order the payment of interest to the extent it is allowed by law; and

L.      Grant other equitable or remedial relief as the Court deems appropriate.

October 2, 2019

ROSENTHAL, MONHAIT & GODDESS, P.A.

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (#3569)
919 Market Street, Suite 1401
Wilmington, DE 19801
(302) 656-4433
bdeleeuw@rmgglaw.com

OF COUNSEL

MCKAY LAW, LLC
Michael C. McKay (Pro hac forthcoming)
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85258
(480) 681-7000
mmckay@mckaylaw.us