IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| M.P. MOON, individually and as representative of a class of participants and beneficiaries in and on behalf of the DuPont Pension and Retirement Plan,<br><br>   Plaintiff,<br>vs.<br><br>Corteva, Inc. and DuPont De Nemours, Inc.,<br><br>   Defendants. | C.A. No. 19-01856-MN |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Plaintiff M.P. Moon ("Plaintiff"), individually and as a representative of a class of participants and beneficiaries of the DuPont Pension and Retirement Plan ("Plan"), brings this action under 29 U.S.C. §1132(a)(1)(B) against defendants Corteva, Inc. ("Corteva"), and Dupont De Nemours, Inc. ("DuPont") (collectively referred to as "Defendants") for breach of fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§1001-1461 ("ERISA").

2. To protect the retirement savings and benefits of workers ERISA "establish[es] standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans." *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987). ERISA fiduciaries – like Defendants here – must act solely in the best interest of participants and for the exclusive purpose of providing them benefits under the plan. (*Id.*) Moreover, ERISA's duty of loyalty is the "highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). ERISA's protections make sense from a policy and humanity perspective too. Congress passed ERISA to protect workers who

have spent their lives working for retirement only to have their retirement benefits pilfered by unscrupulous or imprudent fiduciaries.

3. In this case, Plaintiff was wrongly deprived of more than $135,000 in retirement benefits. Defendants breached their ERISA fiduciary duties of prudence and loyalty owed to Plaintiff and other Plan participants by (i) failing to adequately notify, as a prudent and loyal fiduciary would, Plaintiff and Plan participants of when they are eligible for full unreduced retirement benefits; (ii) failing to prudently administer the Plan for the exclusive purpose of providing benefits to Plaintiff and Plan participants; and (iii) pocketing unclaimed retirement benefits for themselves; thereby, profiting from their breaches of fiduciary duties.

## PARTIES

4. Plaintiff is a citizen and resident of the State of Delaware. He was an employee of DuPont from March 7, 1979 to October 31, 1999. At all times relevant to this action, Plaintiff was and is a participant in and beneficiary of the Plan.

5. Defendant Corteva, Inc., ("Corteva") is a Delaware corporation with its corporate headquarters located at 974 Centre Road, Wilmington, Delaware 19805. As of June 1, 2019, Corteva, was the parent company of DuPont and the entity with ultimate responsibility for the maintenance of the Plan. Corteva is a fiduciary to the Plan, its participants, and beneficiaries.

6. Defendant DuPont is a Delaware corporation with its corporate headquarters located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DuPont is the Plan sponsor. DuPont is a fiduciary to the Plan, its participants, and beneficiaries.

## THE PLAN

7. The Plan is a noncontributory defined benefit plan which covers the majority of employees of DuPont and its consolidated subsidiaries. The Plan is an employee pension benefit

plan within the meaning of ERISA § 3(2) and (3), 29 U.S.C. §§ 1002(2) and (3), and ERISA § 4(a), 29 U.S.C. § 1003(a).

8. Participating DuPont employees, including Plaintiff, become vested in the Plan after the completion of 5 years of service or the attainment of normal retirement age, which is defined as the later of age 65 or upon completion of five years of service.

9. Generally, under the terms of the Plan, a participant becomes vested in his or her pension benefits after completion of five years of eligibility service. Once vested, a participant's pension benefit, and all benefits accrued after becoming vested, are non-forfeitable and cannot be reduced. 29 U.S.C. § 1053.

10. Plan participants, including Plaintiff, are eligible to receive vested benefits upon termination of employment, retirement, death or total disability and the benefits may be paid immediately if age and service requirements are met. Benefits are determined using a formula which takes into account service and final average earnings and are paid as a monthly annuity over the lifetime of the participant, or over the lifetime of the participant and his or her surviving spouse.

11. Ordinarily, benefits become payable once a participant has terminated employment and reached the plan's normal retirement age of 65. A participant who commences benefits at age 65 will receive the full unreduced amount of his or her accrued benefit.

12. A vested participant who has terminated employment with DuPont can begin receiving pension benefits earlier than age 65, but unless the participant satisfies certain conditions, the amount of the benefit will be reduced to account for the early commencement, since he or she will receive payments over a longer period.

13. Certain participants like Plaintiff, whose employment was involuntarily terminated, are eligible to receive unreduced retirement benefits commencing earlier than normal retirement

age. In fact, Plaintiff was eligible to begin receiving unreduced benefits as early as July 1, 2010, when Plaintiff was 58.

14. Defendants never <u>adequately</u> informed Plaintiff of his right to receive unreduced pension benefits commencing on July 1, 2010. Plaintiff did not become aware that he was eligible to receive unreduced retirement benefits prior to normal retirement age of 65 until he applied for Social Security benefits and was informed by the Social Security Administration that, based on information provided by DuPont, he may have been eligible for unreduced retirement benefits from the Plan starting in 2012. As Plaintiff would later learn from Defendants, he was eligible for unreduced retirement benefits beginning in July 2010.

15. Upon learning this, Plaintiff filed a claim with Benefit Determination Review Team, the committee established by DuPont to review claims for benefits, asking that missed pension payments, totaling $135,492, and which would otherwise be lost forever, be paid to him. The Benefit Determination Review Team denied Plaintiff's claim, citing administrative procedures.

16. In 2012, as required by law, Defendants notified the Internal Revenue Service (which then notified the Social Security Administration) of Plaintiff's eligibility for unreduced pension benefits commencing five years prior to reaching his normal retirement age (though DuPont later informed Plaintiff that he was eligible for unreduced pension benefits seven years prior to normal retirement age). Though Defendants were demonstrably aware that Plaintiff was eligible for unreduced pension benefits and provided notice of Plaintiff's eligibility to the IRS, Defendants failed to notify *Plaintiff* of his eligibility to apply for unreduced benefits.

17. ERISA requires Defendants to deliver pension benefit statements and quarterly account statements to participants in individual account plans. Further, ERISA requires Defendants

to deliver pension benefit statements to all active participants at least every three years, which must indicate the total retirement benefits accrued, and the nonforfeitable pension benefits accrued, or the earliest date on which the benefits will become nonforfeitable, and must be "written in a manner calculated to be understood by the average plan participant." ERISA, 29 U.S.C § 1025(a). Defendants provided no statements to Plaintiff for nearly 11 years.

18.     This procedure, administration, and notice failure by Defendants constitutes a blatant violation of Defendants' ERISA fiduciary duties to administer the Plan solely in the best interest of participants for the exclusive purpose of providing them benefits. Instead, the procedure is designed to benefit DuPont at the expense of unwitting participants who fail to apply for pension benefits as of the date they are first eligible for unreduced benefits. Because pension benefits are paid monthly for life, a participant who fails to commence his or her pension at the earliest date they are eligible for unreduced benefits will never recover the lost payments. Instead, those lost payments will benefit DuPont, which has the financial responsibility for funding all benefits paid from the Plan. The failure to pay Plaintiff and other similarly situated participants the entire value of the pensions will reduce the financial cost to DuPont of funding those benefits.

19.     The failure to pay Plaintiff and Plan participants the entire value of their benefit results in an illegal forfeiture in violation of ERISA § 203, 29 U.S.C. 1503.

20.     To remedy these fiduciary breaches and violations of ERISA's rules, Plaintiff, individually and as representative of a class of participants and beneficiaries in the Plan, brings this action to enforce Defendants' personal liability under 29 U.S.C. §1109(a).  In addition, Plaintiff seeks such other legal and equitable or remedial relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

21. This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331 because it is an action under 29 U.S.C. §1132(a)(1)(B) and 29 U.S.C. §1132(a)(2) and (3).

22. This District is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because it is the district in which the Plan is administered, where at least one of the alleged breaches took place and where Plaintiff and at least one Defendant resides.

## ERISA'S FIDUCIARY STANDARDS

23. The duty of prudence, codified in ERISA §404(a)(1)(B), requires pension plan fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B). The "prudent person" standard asks whether the fiduciaries employed appropriate methods to administer the plans. *Katasaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984) (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983), cert denied, 464 U.S. 1040 (1984). Fiduciaries' prudence is measured against an objective standard, and their own lack of familiarity with prudently administering plans is no excuse for failing to act with the requisite skill, care, and diligence of the circumstances then prevailing. (*Id.*) Consequently, failure to meet the duty of prudence can render plan fiduciaries liable for plan losses. ERISA § 409(a), 29 U.S.C. § 1109(a)).

24. ERISA § 404(a)(1)(A) requires fiduciaries to act "solely in the interest of the participants and beneficiaries," and "for the exclusive purpose of providing benefits to participants and their beneficiaries." ERISA § 404(a)(1)(A). The Supreme Court has "often noted that an ERISA fiduciary's duty is 'derived from the common law of trusts.'" Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828 (2015) (quoting Cent. States Se. & Sw. Areas Pension Fund v. Cent. Transp.

Inc., 472 U.S. 559, 570 (1985). The Restatement (Third) of Trusts, which the Supreme Court has turned to "[i]n determining the contours of an ERISA fiduciary's duty" explains that the "duty of loyalty" bars fiduciaries from engaging in transactions or procedures that involve self-dealing or that otherwise involve or create a conflict between a fiduciary's duties and personal interest. Restatement (Third) of Trusts Sec. 78 (2007); see also Pegram v. Herdich, 530 U.S. 211, 224 (2000) ("Perhaps the most fundamental duty of a [fiduciary] is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary and must exclude all selfish interests and all consideration of the interests of third persons.") Failure to meet the duty of loyalty can render plan fiduciaries liable for plan losses. ERISA § 409(a), 29 U.S.C. § 1109(a)).

## FACTS

25. Plaintiff worked for DuPont for more than 20 years when his employment was involuntarily terminated in 1999. At the time of his employment termination in 1999, Plaintiff received a document titled, "Pension Calculation Statement Reflecting TPS Lump Sum Election (Retirement Package) ("Pension Calculation Statement")," attached as Exhibit A to this First Amended Complaint.

26. The Pension Calculation Statement provides that Plaintiff's Earliest Unreduced Benefit Commencement Date was July 1, 2010. Plaintiff does not allege any misrepresentations in the Pension Calculation Statement, but emphasizes the document was provided to him only once and approximately 11 years before his Earliest Unreduced Benefit Commencement Date.

27. Thereafter in March of 1999, Plaintiff received an Accrued Benefit Statement describing his Plan benefits, attached as Exhibit B to this Complaint. Nothing in the Accrued Benefit Statement indicates that Plaintiff was eligible to apply for unreduced benefits in July 2010, or at any time prior to his normal retirement age of 65. Plaintiff does not allege there are any

misrepresentations in the Accrued Benefit Statement, but rather that the Accrued Benefit Statement provides no information about unreduced benefits.

28. Thereafter, for a period of roughly 11 years, Plaintiff received no notices from Defendants about unreduced retirement benefits.

29. Defendants never adequately informed Plaintiff of his right to receive unreduced retirement benefits commencing on July 1, 2010. Plaintiff did not become aware that he was eligible to receive unreduced retirement benefits prior to a normal retirement age of 65 until he applied for Social Security benefits and was informed by the Social Security Administration that, based on information provided to the Social Security Administration from DuPont, Plaintiff may have been eligible for unreduced retirement benefits from the Plan starting in 2012. As Plaintiff would later discover from Defendants, he was eligible from unreduced retirement benefits beginning in July 2010.

30. Upon first learning of his eligibility for unreduced retirement benefits, Plaintiff requested, by filing a claim with Defendants' Benefit Determination Review Team, for pension payments retroactive to July 2012; the date he thought was his earliest retirement date based on information he had obtained, not from DuPont or the Plan Administrator, but from the Social Security Administration.

31. His claim was denied, citing to a provision in the 2013 Summary Plan Description stating that a participant must apply to commence retirement benefits, that the application for benefit must be completed "before your retirement kit expires" and "If you do not comp1ete the process before your retirement kit expires, you must *initiate* your *retirement request* again using a *future* pension *payment* start date. Missed payments will not be restored to you ...."

32. Even apart from the failure to adequately notify Plaintiff of his eligibility for unreduced early retirement benefits, there is no reason for Defendants who are fiduciaries with the highest duties of loyalty and prudence known to law, to adopt a procedure that fails to provide participants with timely notices of eligibility for benefits, while providing such notices to third-parties, and denies a participant benefits to which he or she is entitled. In fact, in addition to being a breach of ERISA's fiduciary duties of prudence and loyalty, it is also a violation of ERISA § 203 to require a participant to forfeit vested benefits.

33. There is no practical reason to adopt and enforce such a procedure, because the benefits are owed to the participant, and the refusal to pay these vested benefits results in unjust enrichment to the Plan, ultimately for the benefit of DuPont. No other participant's benefit will be increased as a result of the windfall to the Plan. This fact demonstrates that this procedure is born out of self-interest and disloyalty to participants and designed to benefit DuPont because the forfeited pension payments inure to the Plan and benefit of DuPont.

34. The opposite result would occur if the Plan had paid Plaintiff or any other participant more than the benefit to which he or she was entitled. On information and belief, the Plan has procedures for recovering those excessive payments, including by the reduction of future benefits payments. Such a procedure is not only acceptable, it is effectively required in order to fulfill DuPont's fiduciary duties to the Plan to ensure that plan assets are adequately protected for the benefit of all participants. That same fiduciary duty, however, requires that underpayments be restored as well.

35. As noted above, under ordinary circumstances, a participant who commences retirement benefits earlier than normal retirement age will receive a reduced benefit to account for the fact that monthly benefit payments will be made over a longer period than if benefits began at

normal retirement age. Conversely, if benefits commence later than the date at which a participant is eligible for unreduced benefits, the benefit payments should be actuarially increased to take into account that benefit payments will be made over a shorter period that if they had begun at the earliest commencement date.

36.     The only notice Plaintiff ever received referring to his eligibility for an unreduced early retirement benefit was the Pension Calculation Statement and nearly 11 years before the earliest date on which he could begin receiving unreduced retirement benefits. And even the Pension Calculation Statement is cryptic at best, stating only "Earliest Unreduced BCD – 7/1/2010." There was no explanation of what that meant and no subsequent notification that Plaintiff was eligible to begin receiving unreduced benefits prior to his attainment of normal retirement age. For example, tables included in the 2018 Summary Plan Description indicate that Plaintiff's benefit, based on 20 years of service, would have been reduced if he commenced earlier than age 65. Importantly, none of the notices Plaintiff received ever clearly disclosed to Plaintiff the dollar amount of benefits he was eligible to receive or would be eligible to receive. These simple disclosures could have and should have been made by Defendants. But they never were. Instead Defendants provided only an opaque and ineffective disclosure.

37.     The single cryptic reference in the Pension Calculation Statement of Plaintiff's Earliest Unreduced BCD, the repeated failure in subsequent statements of pension benefits and other plan communications to fully describe Plaintiff's right to an unreduced early retirement benefit, and the stated justification for the denial of Plaintiff's claim that DuPont is not required to provide notice to Plaintiff when it notifies the IRS and Social Security Administration, of Plaintiff's and Plan participants' eligibility for unreduced early retirement benefits, indicates an

attempt to conceal from Plaintiff and Plan participants, their rights to unreduced early retirement benefits.

38. Finally, in 2017, Plaintiff was notified by DuPont that he was eligible to commence his benefit at age 65, after he had lost more than $135,000 in vested unreduced retirement benefits. Any reasonable fiduciary, acting in the best interest of plan participants, would have provided Plaintiff with regular communications about his eligibility for retirement benefits. ERISA's duties of prudence and loyalty require such communications.

## CLASS ACTION ALLEGATIONS

39. 29 U.S.C. §1132(a)(1) authorizes any participant or beneficiary of the Plan to bring an action to recover benefits due to him under the terms of his plan or to enforce his rights under the terms of the plan.

40. 29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109(a).

41. In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3), Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the Plan, excluding Defendants and any participant who is a fiduciary to the Plan, (the "Class"), who was eligible for unreduced retirement benefits from the Plan prior to attainment of normal retirement age of 65 and whose unreduced retirement benefits commenced on a date that was later than his or her earliest eligibility for unreduced pension benefits.

42.     This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a. As of December 31, 2017, the Plan had 112,734 participants. Accordingly, the Class is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to the Class, including without limitation: who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to Plaintiff and the Class; what are the losses to Plaintiff and the Class resulting from each breach of fiduciary duty; and what Plan-wide equitable and other relief the court should impose in light of Defendants' breach of duty.

c. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a Plan participant during the time period at issue in this action, and, like all Class members, he did not receive Plan benefits until he reached the Normal Retirement Date at age 65, he was misled as to the availability of full pension benefits as of a date in advance of the Normal Retirement Date, and he was harmed by Defendants' misconduct.

d. Plaintiff is an adequate representative of the Class because he was a participant in the Plan during the Class period, has no interest that is in conflict with the Class he seeks to represent, is committed to the vigorous representation of the Class and has engaged experienced and competent attorneys to represent the Class.

e. Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of: (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of their fiduciary duties to the Plan and personal

liability to the Plan under 29 U.S.C. §1109(a); and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

43. A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no member of the Class has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

44. Plaintiff's counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Classes under Rule 23(g).

## COUNT I
### (Breach of ERISA Duty of Prudence, ERISA § 404(a)(1)(B))
**Failure to Provide Prudent Notice of Eligibility for Early Unreduced Retirement Benefits**

45. Plaintiff restates and incorporates the allegations in the preceding paragraphs.

46. The scope of the fiduciary duties and responsibilities of Defendant includes administering the Plan and acting with the care, skill, diligence, and prudence required by ERISA. *See* ERISA § 404(a)(1)(B).

47. Defendant failed to engage in a prudent process for reviewing the eligibility of Plaintiff and Class members to receive early unreduced pension benefits and to provide them with prudent and adequate notice of their eligibility for early unreduced pension benefits.

48. Defendants provided Plaintiff with a single opaque disclosure about his eligibility for early unreduced retirement benefits in the 1999 Pension Calculation Statement. Thereafter, for nearly 11 years, Defendants failed to provide Plaintiff with any notices or information about his eligibility for early unreduced retirement benefits. Plaintiff alleges this notice was inadequate to satisfy Defendants' ERISA duties of prudence. A prudent fiduciary could have and would have provided Plaintiff with better notice. Especially, here, when Defendants were armed with information that Plaintiff was forfeiting vested retirement benefits but did not communicate this important fact to Plaintiff.

49. Unbeknownst to Plaintiff, he was eligible to receive his unreduced retirement benefits as early as July 1, 2010. Indeed, in 2012, Defendants notified the Social Security Administration (but not Plaintiff), that Plaintiff was eligible to begin receiving his unreduced retirement benefits.

50. Had Plaintiff known that he was eligible to receive his early unreduced retirement benefits in 2010 or 2012, he would have promptly requested that Defendants commence payment of such benefits at the earliest date possible.

51. It is imprudent for Defendants to provide third parties, but not Plaintiff and Plan participants, with timely information about Plaintiff and Plan participant's eligibility for early unreduced retirement benefits.

52. Defendants' silence is not golden. The value of the pension benefits effectively forfeited by Plaintiff due to Defendants' breach of fiduciary duties and violations of ERISA

amount to at least $135,492.00, exclusive of interest and penalties, were such benefits commenced as of July 2010. Thus, Plaintiff has been injured by Defendants' breach of fiduciary duties.

## COUNT II
### (Breach of ERISA Fiduciary Duty of Loyalty, ERISA § 404(a)(1))
### Using a Notice Program that Causes Plan Benefits to Revert to Defendants

53. Plaintiff restates and incorporates the allegations contained in the preceding paragraphs.

54. Defendant failed to satisfy its duty of loyalty regarding the process it employs to review eligibility for Plan participants to receive early unreduced benefits and to provide adequate notice to Plan participants of their eligibility for early unreduced early retirement benefits.

55. Had a loyal fiduciary conducted a prudent process for the administration, notification, and review of eligibility for payments to Plaintiff of early unreduced retirement benefits, Defendants would have determined that Plaintiff was eligible to receive early unreduced retirement benefits not later than July 1, 2010, and Defendants would have provided Plaintiff with clear and concise notice of Plaintiff's eligibility for early unreduced retirement benefits. This is not a buyer beware type relationship between Plaintiff and Defendants. Defendants are obligated by law to act prudently and solely in the best interest of Plaintiff and Plan participants. Defendants were obligated to act prudently and to ensure that Plaintiff obtained the benefits of his early unreduced retirement benefits. But Defendants' silence and opaque disclosures resulted in Plaintiff losing over $135,000 in pension benefits.

56. On information and belief, there are hundreds, if not thousands, of participants in the Plan who are similarly situated and have forfeited pension benefits due to Defendants' fiduciary breaches. Total participant losses will be determined after complete discovery in this case and are continuing.

57.     But the procedures adopted by Defendants for administering and paying pension benefits to individuals who are eligible for unreduced pension benefits prior to normal retirement age are designed to benefit Defendants at the expense of participants because this unclaimed money reverts back to Defendants and thus violates Defendants' strict duties of loyalty to act solely in the best interest of participants and beneficiaries.

58.     As a result of the fiduciary breach of the duty of loyalty, Defendants, have and continue to retain funds due Plaintiff and other participants and continue to be subject to restitution as appropriate equitable relief under ERISA, 29 U.S.C. Section 1 to allow transfer of said funds to and for the benefit of Plaintiff and the Class. *See* ERISA § 404(a)(1).

## **PRAYER FOR RELIEF**

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

A.     Find and declare that the Defendants have breached fiduciary duties as described above;

B.     Find and declare that the Defendants have improperly denied Plaintiff and the Class of benefits to which they are entitled under the terms of the Plan;

C.     Find and adjudge that Defendants are personally liable to make good to the Plaintiff and the Class all illegally forfeited benefits and all losses resulting from each breach of fiduciary duties, and to otherwise restore the Plaintiff, the Class and the Plan to the position they would have occupied but for the failure to pay vested benefits and for breaches of fiduciary duty;

D.     Determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

E. Order Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plaintiff the Class for unpaid benefits and to the Plan under §1109(a);

F. Remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

G. Surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

H. Enjoin he Defendants from illegally forfeiting vested benefits;

I. Certify the Class, appoint the Plaintiff as a Class Representative, and appoint Plaintiff's counsel P. Bradford deLeeuw and Michael McKay as Class Counsel;

J. Award to the Plaintiff and the Class attorney's fees and costs under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

K. Order the payment of interest to the extent it is allowed by law; and

L. Grant other equitable or remedial relief as the Court deems appropriate.

October 20, 2020

DELEEUW LAW LLC

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (#3569)
1301 Walnut Green Road
Wilmington, Delaware 19807
(302) 274-2180
brad@deleeuwlaw.com

OF COUNSEL

MCKAY LAW, LLC
Michael C. McKay (Pro hac forthcoming)
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85258
(480) 681-7000
mmckay@mckaylaw.us