Ballard Spahr LLP

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
TEL 302.252.4465
FAX 302.252.4466
www.ballardspahr.com

Beth Moskow-Schnoll
Tel: 302.252.4447
Fax: 302.252.4466
moskowb@ballardspahr.com

David S. Fryman
Tel: 215.864.8105
Fax: 215.864.8999
frymand@ballardspahr.com

April 22, 2022

*By Electronic Filing*

The Honorable Stephanos Bibas
United States Court of Appeals for the Third Circuit
601 Market Street
Philadelphia, PA 19106

Re: *M.P. Moon v. E. I. du Pont de Nemours and Co.*,
Case No. 1:19-cv-1856-SB (D. Del.)

Dear Judge Bibas:

We respectfully submit this letter brief on behalf of Defendant E. I. du Pont de Nemours and Company ("DuPont") in the above-referenced matter. With the Court's permission, DuPont writes to address the inapplicability of *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) ("CIGNA") and *Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529 (E.D. Pa. 2019) ("Wawa") to the pending motion for class certification and the parties' respective positions, as discussed during oral argument held on April 14, 2022.

For the reasons set forth below, *CIGNA* and *Wawa*, like all of the other cases cited by Plaintiff in his briefs, are inapplicable here. The Supreme Court in *CIGNA* and the District Court in *Wawa* did indeed set aside the requirement to show detrimental reliance, but those cases and, in particular, the remedy sought in those cases, are very different from the circumstances in this case. Instead, detrimental reliance remains a necessary element of Plaintiff's breach of fiduciary duty claim and will require individualized proof by each class member. So too has Plaintiff failed to meet the less rigorous "actual harm" requirement suggested (but not required) in *CIGNA*, as the communications at issue are not uniform across the proposed class. For these reasons and those discussed in DuPont's brief and at the oral argument, Plaintiff's motion should be denied.

## I. The Language At Issue In *CIGNA* Is "Purely Dicta" And Not Binding On District Courts.

At the outset, it is important to note that Justice Scalia's concurrence in *CIGNA* urged district courts to approach the Supreme Court's majority opinion with caution:

> The Court's discussion of the relief available under § 502(a)(3) and *Mertens* is purely dicta, binding upon neither us nor the District Court. The District Court need not read any of it—and, indeed, if it takes our suggestions to heart, we may very well reverse. Even if we adhere to our dicta that contract reformation, estoppel and surcharge are '"distinctively equitable' remedies," it is far from clear that they are available remedies in this case. The opinion for the Court does not say (much less hold) that they are and disclaims the implication.

*CIGNA*, 563 U.S. at 862-63. Undersigned counsel has not located a single Third Circuit case applying the *CIGNA* dicta regarding the equitable remedies available under Section 502(a)(3) to an analysis of whether an ERISA breach of fiduciary duty claim based on allegedly misleading communications is appropriate for class treatment. Accordingly, Justice Scalia's words of caution are equally applicable to the Court in this instance.

## II. Unlike The Plaintiffs in *CIGNA* and *Wawa*, Plaintiff Here Does Not Seek Plan Reformation, But Relief Based On An Estoppel Theory.

The Court in *CIGNA* explained that the limited issue on which it opined was whether the District Court applied the correct legal standard, namely, "likely harm," in deciding whether CIGNA's notice violations caused sufficient injury to warrant legal relief. The Court explained that "the relevant standard of harm will depend upon the equitable theory by which the District Court provides relief." *CIGNA*, 563 U.S. at 425. In *CIGNA*, the equitable theory was reformation of the plan[1] in order to remedy the significantly incomplete and misleading CIGNA disclosures about plan amendments, and to prevent fraud. *Id.* at 440. Similarly, in *Wawa*, the plaintiff also sought to remedy plan disclosures following challenges to plan amendments. *Wawa*, 387 F. Supp. 3d at 534.

Significantly, the Court in *CIGNA* went on to note that, "when a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made." *CIGNA*, 563 U.S. at 443. In this regard, claims asserting breach of fiduciary duty based on a misrepresentation (or omission) seek equitable relief akin to an estoppel theory. That was the case in *Carr v. International Game*

[1] The plaintiffs in *CIGNA* sought to have the District Court amend (*i.e.*, reform) the terms of the pension plan to change the manner in which pension benefits were calculated.

*Technology*, in which the District Court rejected the plaintiffs' attempt to invoke *CIGNA* to avoid their obligation to prove detrimental reliance, and denied class certification:

> Plaintiffs' argument that the Supreme Court's recent decision in *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 179 L. Ed. 2d 843 (2011), relieves them of their burden of proving detrimental reliance as an element of their communications claim is misplaced. The *Amara* Court addressed the need to show detrimental reliance with regard to the type of equitable remedy sought pursuant to ERISA § 502(a)(3), which authorizes "appropriate equitable relief" for violations of ERISA. After analyzing principles of the law of equity, ***the Court affirmed that when a court exercises authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made***, but that such a showing may not be necessary for other types of equitable relief such as surcharge or reformation. The Court did not analyze whether detrimental reliance is an element of a claim for misrepresentation in violation of fiduciary duties arising under ERISA. As noted above, courts in this Circuit require detrimental reliance by a plaintiff as the causation element of a misrepresentation claim. *Amara* and Plaintiffs' arguments relying thereon are therefore completely beside the point.

Case No. 3:09-cv-00584, 2012 U.S. Dist. LEXIS 35688, at *15-16 (D. Nev. Mar. 16, 2012) (internal citations omitted) (emphasis added) ("*Carr*").

Here, Plaintiff's Complaint has not sought and the Court has not suggested that reformation is the appropriate remedy. Nor could it be, as (unlike *CIGNA* and *Wawa*) Plan amendments are *not* at issue and indeed the Plan in question has always consistently required participants to apply for early unreduced benefits before they can be paid out—to do otherwise would constitute a clear violation of the requirements of ERISA.[2]

Rather, like the plaintiffs' claim in *Carr*, Plaintiff here effectively requests that DuPont be estopped from enforcing the Plan as written, due to its alleged failure to adequately inform, on which Plaintiff allegedly relied to his detriment.

---

2 *See* 29 U.S.C. § 1056(a) (providing that a participant must consent to receive pension benefits prior to normal retirement age); 29 U.S.C. § 1055(a) (providing that a pension benefit must be paid in the form of a qualified joint and survivor annuity, unless the participant elects another form of benefit and, if the participant is married, the participant's spouse provides written consent). For the same reason, the damages that Plaintiff seeks cannot be properly characterized as restitution before a violation has been established, as the pension benefits are Plan assets unless and until participants elect to receive pension benefits.

**III. Neither Detrimental Reliance Nor Actual Harm Can Be Established With Common Proof On A Class-Wide Basis.**

In *CIGNA*, the lower court explained that "only employees whom CIGNA's disclosure failures had harmed could obtain relief," and determined "(1) that the evidence presented had raised a presumption of likely harm suffered by the members of the relevant employee class" and (2) that CIGNA had failed to offer contrary evidence with respect to some or all of these employees to rebut that presumption. 563 U.S. at 432. The Supreme Court agreed, explaining that a fiduciary may be surcharged under § 502(a)(3) "only upon a showing of actual harm—proved (under the default rule for civil cases) by a preponderance of the evidence." *Id*. at 444. Actual harm, the Court explained, "***may sometimes consist of detrimental reliance***," or might also come from a statutory violation of ERISA, as was present in *CIGNA*. *Id*. (emphasis added). The Court further clarified that "a plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation. Although it is not always necessary to meet the more rigorous standard implicit in the words 'detrimental reliance,' actual harm must be shown." *Id*.

Neither actual harm nor detrimental reliance can be established class wide where, as here, DuPont has submitted uncontroverted evidence that the individuals in the proposed monetary class did not all receive the same disclosures. Some participants, like Plaintiff, received a Pension Calculation Statement (delivered shortly before termination of employment) identifying the EUBCD. Others received a significantly different form of Statement of Deferred Vested Benefit that Plaintiff himself conceded provided "clear" information with respect to participants' EUBCDs. (*Compare* Exhibit A *with* Exhibit B, both attached hereto).[3] Plaintiff testified he did not receive summary plan descriptions ("SPDs"), but it was nonetheless DuPont's policy (which Plaintiff does not dispute) to mail these SPDs to the individuals in the proposed monetary class at least once every five years and, upon establishment of the DuPont Connection website (later renamed Corteva Connection), to post the current version on the website. These SPDs include tables enabling each participant to calculate their EUBCD.[4]

---

[3] The Statement of Deferred Vested Benefit replaced the Accrued Benefit Statement that Plaintiff received subsequent to the Pension Calculation Statement. In fact, the vast majority of putative class members who did not commence their retirement benefit as of their EUBCD received the "clear" Statement of Deferred Vested Benefit.

[4] These critical differences in class communications distinguish this matter from the facts in *Wawa* and those of other district court opinions which involved uniform class wide misrepresentations in the SPDs at issue. *Wawa*, 387 F. Supp. 3d at 543; *see also Osberg*

Equally fatal to any showing of either detrimental reliance or actual harm are the individualized circumstances wherein some participants terminated employment just weeks or months before they would be eligible to collect unreduced benefits. These participants would be captured in Plaintiff's overbroad definition of the monetary class. Yet, a reasonable person in receipt of notice of his or her EUBCD at the time of employment termination would no doubt be able to remember and apply to commence unreduced retirement benefits just a short time thereafter. Recall, more than 90% of those eligible for early unreduced benefits during the proposed class period commenced their benefit before or as of their EUBCD.

**IV. Conclusion.**

For these reasons and those raised in DuPont's Brief in Opposition to Class Certification and at oral argument, the Court should deny Plaintiff's motion for class certification.

Respectfully,

Beth Moskow-Schnoll (No. 2900)

David S. Fryman

cc: Counsel of Record

---

*v. Foot Locker, Inc*., No. 07-1358 (KBF), 2014 U.S. Dist. LEXIS 159711, at *4 (S.D.N.Y. Sept. 24, 2014) (relying on "common, class-wide communications").